IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:21CV626 |
| ) | |
| RALPH C. TAYLOR, JR., et al., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION AND ORDER**

**OSTEEN, JR., District Judge**

This is a tax collection case. Presently before the court are three motions to dismiss the Government's Amended Complaint for failure to state a claim. (Docs. 36, 38, 40.) The Government has responded in opposition to the motions. (Doc. 43.) The three motions will be denied.

**I.   FACTUAL BACKGROUND**

For purposes of a motion to dismiss, this court accepts all facts alleged in the Amended Complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). However, this court is not bound to accept a legal conclusion couched as a factual allegation. Id.

Ralph Taylor, Jr., and Nancy Taylor (together, the "Taylors") owe the Government over seven million in unpaid taxes. (Am. Compl. to Reduce Tax Assessments to J. and Foreclose

Federal Tax Liens on Real Property ("Am. Compl.") (Doc. 28) ¶¶ 10, 14.) The Government has assessed the following taxes against the Taylors jointly:

| Tax Year | Date of Assessment | Total Unpaid Balance as of 6/14/2021 |
|---|---|---|
| 2008 | 4/22/2013 | $329,597.08 |
| 2010 | 12/12/2011 | $424,688.77 |
| 2011 | 11/19/2012 | $4,888,100.73 |
| 2012 | 2/24/2014 | $1,243,115.22 |
| 2014 | 11/30/2015 | $252,419.46 |
| | **Total Assessments** | **$7,137,921.26** |

(Id. ¶ 10.) The taxes remain unpaid. (Id. ¶ 13.) Ralph Taylor, Jr., himself owes the Government an additional million dollars in unpaid taxes:

| Tax Year | Date of Assessment | Total Unpaid Balance as of 6/14/2021 |
|---|---|---|
| 2009 | 8/29/2011 | $1,014,211.61 |

(Id. ¶¶ 16, 20.)

In February 2017, the Taylors established T Trust and named as trustees Ralph Taylor, III, and Rachel Taylor Lane (together,

- 2 -

the "Trustees").[1] (Id. ¶ 22.) The Taylors opened a checking account in the name of T Trust and listed the Trustees as the authorized signors. (Id. ¶ 23.) The Taylors control this account and use its funds to pay their mortgage, household expenses, and personal expenses, while shielding their assets from creditors. (Id. ¶ 32.) All business income reported by T Trust for 2018[2] was distributed to the Taylors. (Id. ¶ 30.) In 2019, the Taylors transferred funds to T Trust's checking account. (Id. ¶ 31.)

#5 Inlet Hook NCR, LLC ("#5 LLC") is a limited liability company wholly owned by the Taylors. (Id. ¶ 8.) Through #5 LLC, the Taylors owned a rental property. (Id. ¶ 25.) In June 2019, the Taylors sold that property and used the proceeds to purchase real property located at 10710 Governors Drive in Chapel Hill, North Carolina. (Id. ¶¶ 5, 26.)

---

[1] Although not alleged in its Amended Complaint, the Government asserts in its response brief that that these individuals are the Taylors' children. (Resp. to Mots. to Dismiss ("Gov't Resp.") (Doc. 43) at 6.) The Trustees do not challenge this assertion. (See Reply in Further Supp. of Trustees' Mot. to Dismiss ("Trustees' Reply") (Doc. 46).) Nevertheless, because that fact was not alleged in the Amended Complaint, this court cannot consider it when adjudicating the motions to dismiss. See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing . . . .")

[2] This was the most recent year for which data was available when the suit was filed. (Gov't Resp. (Doc. 43) at 6.)

The Taylors titled 10710 Governors Drive in the names of T Trust and #5 LLC as tenants in common with thirty and seventy percent ownership interests, respectively. (Id. ¶ 27.) The only assets owned by T Trust and #5 LLC are their checking accounts and ownership interests in 10710 Governors Drive. (Id. ¶¶ 28-29.)

The Government seeks to collect the over eight million dollars in total unpaid federal income tax liabilities owed by the Taylors and Ralph Taylor, Jr., through enforcing federal tax liens against 10710 Governors Drive to force a foreclosure and sale. (Id. ¶¶ 34-49.) To do this, the Government seeks a determination that T Trust and #5 LLC are the alter egos or nominees of the Taylors. (Id. ¶ 33.)

## II. PROCEDURAL HISTORY

The Government filed its original complaint in August 2021. (Doc. 1.) The complaint named the Taylors, Trustees, #5 LLC, and KS Bank, Inc.,[3] as Defendants. (Id.) After the Taylors, Trustees, and #5 LLC moved to dismiss under Rule 12(b)(6), (Docs. 20, 22, 24), the Government amended its complaint, (Am. Compl. (Doc. 28)).

---

[3] KS Bank was named because it may claim an interest in 10710 Governors Drive pursuant to a mortgage agreement. (Doc. 1 ¶ 6.) For the same reason, KS Bank is named in the Amended Complaint. (Am. Compl. (Doc. 28) ¶ 6.)

- 4 -

Case 1:21-cv-00626-WO-JEP   Document 47   Filed 08/19/22   Page 4 of 14

The Amended Complaint asserts five counts. (Id. ¶¶ 9-49.) Counts I and II seek to reduce the federal tax assessments to judgment. (Id. ¶¶ 9-20.) Count III seeks declarations that T Trust and #5 LLC are the nominees or alter egos of the Taylors.[4] (Id. ¶¶ 21-33.) Counts IV and V seek to rely on those declarations to foreclose tax liens against the Taylors and Ralph Taylor, Jr., and force a sale of 10710 Governors Drive with the proceeds applied against the tax liabilities. (Id. ¶¶ 34-49.)

The Taylors, Trustees, and #5 LLC again moved to dismiss under Rule 12(b)(6). (Docs. 36, 38, 40.) The Taylors and #5 LLC's motions are partial motions to dismiss, seeking to dismiss Counts III, IV, and V. (Docs. 38, 40.) The Trustees' motion appears broader, seeking to dismiss the entire Amended Complaint. (Doc. 36.) All three motions to dismiss were accompanied by briefs, although the Taylors' brief simply adopts by reference the arguments contained in their codefendants' briefs. (Br. in Supp. of Trustees' Mot. to Dismiss Am. Compl.

---

[4] #5 LLC asserts that "it is not clear whether Plaintiff intends to bring a 'nominee' claim against #5 LLC." (Mem. in Supp. of Mot. to Dismiss Am. Compl. ("#5 LLC's Br.") (Doc. 41) at 12.) Although paragraph eight of the Amended Complaint does not include nominee allegations against #5 LLC, (Am. Compl. (Doc. 28) ¶ 8), subsequent paragraphs unequivocally assert nominee allegations against the company, (e.g., id. ¶ 33(A)). This suffices to evince the Government's intent to bring a nominee claim against #5 LLC.

("Trustees' Br.") (Doc. 37); Mem. in Supp. of Mot. To Dismiss Am. Compl. (Doc. 39); #5 LLC's Br. (Doc. 41).) The Government responded in opposition to the motions, (Gov't Resp. (Doc. 43)), and #5 LLC and the Trustees replied, (Reply in Supp. of Mot. to Dismiss Am. Compl. (Doc. 45); Trustees' Reply (Doc. 46)). The motions are now ripe for adjudication.

### III. STANDARD OF REVIEW

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged" and demonstrates "more than a sheer possibility that a defendant has acted unlawfully." Id.

When ruling on a motion to dismiss, this court accepts the complaint's factual allegations as true, id., and is required to "draw all reasonable inferences in favor of the plaintiff," King v. Rubenstein, 825 F.3d 206, 212 (4th Cir. 2016). This court does not, however, accept legal conclusions as true, and "[t]hreadbare recitals of the elements of a cause of action,

- 6 -

supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678.

**IV. ANALYSIS**

The motions to dismiss challenge the Government's contention that T Trust and #5 LLC are the Taylors' alter egos or nominees. (Trustees' Br. (Doc. 37); #5 LLC's Br. (Doc. 41).) "While related, the concepts of nominee . . . and alter ego are independent bases for attaching the property of a third party in satisfaction of a delinquent taxpayer's liability. A nominee theory involves the determination of the true beneficial ownership of property." Oxford Cap. Corp. v. United States, 211 F.3d 280, 284 (5th Cir. 2000) (internal quotation marks omitted) (quoting William D. Elliot, Federal Tax Collections, Liens and Levies ¶ 9.10[2] (2d ed. 2000)). In distinction, "[a]n alter ego theory focuses more on those facts associated with a 'piercing the corporate veil' analysis." Id.

This court concludes that when all reasonable inferences are drawn in favor of the Government, the Amended Complaint, while sparse, has stated sufficient factual content to plausibly allege that T Trust and #5 LLC are the Taylors' nominees. Because the Government has plausibly stated a nominee theory, this court need not at this time address the Government's alter ego theory. Accordingly, the motions to dismiss will be denied,

and this court defers ruling on the alter ego issue until the facts are further developed.

   **A. <u>Nominee Theory as to T Trust</u>**

   Whether a third party is a nominee of a taxpayer is a question of state law. E.g., <u>United States v. Greer</u>, 360 F. Supp. 2d 760, 767 (W.D.N.C. 2005) ("For the purposes of using the entity's property to satisfy the taxpayer's federal tax liabilities, the issue of whether an entity is to be considered the . . . nominee of a taxpayer is determined by state law."); <u>OMOA Wireless, S. Der. L. v. United States</u>, No. 1:06-CV-148, 2010 WL 3199959, at *4 (M.D.N.C. Aug. 12, 2010) ("[I]n order to determine whether a third party is a nominee . . . of the taxpayer, the court must determine whether the taxpayer has a legal right in relation to the property under state law."). Although there is an "absence of North Carolina [state court] cases dealing with nominee status," North Carolina federal district courts have found that eight "factors should be considered under North Carolina law when determining nominee status for purposes of attaching federal tax liens on one individual's property based on the tax liabilities of another." <u>United States v. Greer</u>, 383 F. Supp. 2d 861, 868 (W.D.N.C. 2005).

   Those factors are:

> (1) the treatment by the taxpayer of the asset as his own; (2) control over the alleged nominee by the taxpayer or a close relationship between them; (3) use of the alleged nominee's funds to pay personal expenses of the taxpayer; (4) transfer of the property to the alleged nominee for a nominal sum; (5) the fact that the alleged nominee supported the taxpayer; (6) whether the taxpayer expended personal funds for the property; (7) whether the taxpayer enjoys the benefit of the property; and (8) whether the record titleholder interfered with the taxpayer's use of the property.

United States v. Williams, No. 1:17-cv-00278, 2017 WL 3700901, at *2 (M.D.N.C. Aug. 25, 2017) (cleaned up) (quoting United States v. Holland, 637 F. Supp. 2d 315, 320 (E.D.N.C. 2009)). A finding of nominee status can be made even if not all eight factors are present. See, e.g., OMOA Wireless, 2010 WL 3199959, at *7 n.10 (finding third parties to be taxpayer's nominees in the absence of two of the eight factors).

Read in the light most favorable to the Government, the Amended Complaint contains sufficient factual content to plausibly allege, either expressly or via reasonable inferences, that all eight nominee factors are present regarding T Trust.

Three of the factors—two, three, and five—are expressly alleged. Those factors concern whether the Taylors controlled or had a close personal relationship with T Trust, and whether T Trust supported the Taylors and paid their personal expenses. See Williams, 2017 WL 3700901, at *2. The following facts suffice to allege those factors: the Taylors created T Trust and

- 9 -

established its checking account; the Taylors control that checking account and use its funds to pay their mortgage, household, and personal expenses; T Trust's only other asset is its ownership interest in 10710 Governors Drive, which the Taylors facilitated by titling thirty percent of the property in T Trust's name; and, all T Trust's business income was distributed to the Taylors. (Am. Compl. (Doc. 28) ¶¶ 22-23, 27, 29-30, 32.)

Factor six, concerning whether the Taylors expended personal funds for 10710 Governors Drive, has also been expressly alleged. The Government alleges that "the Taylors . . . purchase[d] the Real Property." (Id. ¶ 26.) This factor is also established by the allegation that the Taylors transferred funds to T Trust's checking account, which paid 10710 Governors Drive's mortgage. (Id. ¶¶ 31-32.)

Even if not explicitly alleged, the remaining factors can be reasonably inferred from the Amended Complaint's express allegations. Factors one, seven, and eight concern whether the Taylors treat the asset as their own and enjoy the benefits of it without interference from T Trust. See Williams, 2017 WL 3700901, at *2. The Government alleges that to shield their assets, the Taylors use T Trust to pay their household and personal expenses—including "their mortgage," seemingly

- 10 -

referring to 10710 Governors Drive's mortgage. (See id. ¶ 32 (emphasis added).) That explicit allegation gives rise to the reasonable inference that the Taylors treat 10710 Governors Drive as their own and enjoy it without interference from T Trust. Factor four, concerning whether the property was transferred to T Trust for a nominal sum, can also be reasonably inferred from the Amended Complaint. The Amended Complaint states that the proceeds from selling #5 LLC were used to purchase 10710 Governors Drive. (Id. ¶ 26.) Consequently, the reasonable inference from this allegation is that T Trust did not expend its own funds for the property.

Therefore, the Government has plausibly alleged, either directly or by raising a reasonable inference, all the nominee factors. This court will thus deny the Trustees' motion to dismiss.

### B. Nominee Theory as to #5 LLC

The same eight factors apply to whether the Government has plausibly alleged that #5 LLC is the Taylors' nominee. There are slightly fewer factual allegations to support the Government's nominee theory as to #5 LLC. For example, unlike with T Trust, the Amended Complaint never alleges that #5 LLC's funds are used to pay the Taylors' personal expenses.

But while a closer call than with T Trust, this court concludes that the Government has pled sufficient facts to proceed with its nominee theory against #5 LLC at this early stage in the case. The control or close relationship factor, factor two, is expressly alleged through the allegation that the Taylors are the sole owners of #5 LLC. (Id. ¶ 24.) So too is factor six, which concerns whether the Taylors expended personal funds for the property.[5] (Id. ¶¶ 25-26.)

And for reasons similar to those stated above regarding T Trust, supra Section IV.A, many other factors—specifically, factors one, five, seven, and eight—can be reasonably inferred from the Amended Complaint. It can be reasonably inferred that #5 LLC supports the Taylors by serving as a tax liability

---

[5] #5 LLC claims that this allegation, among others, ignores the corporate form and improperly imputes its actions to the Taylors based only on the Taylors' sole ownership. (#5 LLC's Br. (Doc. 41) at 6-9.) But at this early juncture, this court is required to accept as true the Amended Complaint's allegations that the actions were taken by the Taylors. Those allegations are more than just bare legal conclusions. Although this court defers ruling on the Government's alter ego theory, the Amended Complaint alleges more facts than just sole ownership to support the allegations and undermine #5 LLC's corporate form argument. Those facts include the following: beginning in 2011, the Government began making income tax assessments against the Taylors; these assessments remain outstanding; in 2019, #5 LLC, with the Taylors as its sole owners, sold property it owned in Wilmington; the proceeds of this sale were used to purchase 10710 Governors Drive, with #5 LLC receiving a seventy percent ownership interest in the property; and, that interest is the only asset #5 LLC owns, other than a checking account, (Am. Compl. (Doc. 28) ¶¶ 10, 13, 16, 19, 25-28.)

- 12 -

Case 1:21-cv-00626-WO-JEP   Document 47   Filed 08/19/22   Page 12 of 14

avoidance vehicle that allows the couple to treat 10710 Governors Drive as their own and enjoy the benefits of it without interference from the company. That inference is a reasonable one because if 10710 Governors Drive had been transferred to the Taylors directly, federal tax liens would have attached. See 26 U.S.C. § 6321 ("If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount . . . shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person.").

Therefore, at least six of the eight nominee factors have been expressly alleged or can reasonably be inferred. That suffices to assert that #5 LLC is the Taylors' nominee, and this court will therefore deny #5 LLC's motion to dismiss.

## V. CONCLUSION

For the foregoing reasons, this court will deny all three motions to dismiss. (Docs. 36, 38, 40.)

**IT IS THEREFORE ORDERED** that the Trustees' Motion to Dismiss Amended Complaint, (Doc. 36), is **DENIED**.

**IT IS FURTHER ORDERED** that the Taylors' Motion to Dismiss Amended Complaint, (Doc. 38), is **DENIED**.

**IT IS FURTHER ORDERED** that #5 LLC's Motion to Dismiss Amended Complaint, (Doc. 40), is **DENIED**.

- 13 -

This the 19th day of August, 2022.

                                         /s/ William L. Osteen, Jr.
                                           United States District Judge